Nicholas Gash v. Rosalind Franklin University Nicholas Gash v. Rosalind Franklin University Tara Davis Plaintiff Nicholas Gash Good morning and may it please the court. My name is Tara Davis and I'm here on behalf of the plaintiff Nicholas Gash. This matter comes before your honors today because the district court improperly granted the university's motion to dismiss the plaintiff's amended complaint. Plaintiff is requesting a reversal of those portions of the district court's decision, which granted the motion and dismissed his Title IX and breach of contract claims. The district court's decision should be reversed because the amended complaint plausibly alleged both a Title IX and a breach of contract claim. When assessing a 12B6 motion to dismiss, the court must accept all factual allegations in the complaint as true, must construe the complaint in the light most favorable to the non-moving party, and must draw all reasonable inferences in the plaintiff's favor. The district court failed to do so here, warranting a reversal. Ms. Davis, what was different about this situation for your client because he was a man? So a number of things, starting with the decision to investigate the matter from the beginning. This alleged conduct occurred off campus and the university's Title IX director decided to have the matter investigated and adjudicated. That was the first in a series of procedural irregularities, all of which went against the plaintiff and none of which went against the complainant, Jane Roe. Does that make it accuser-centered versus male-female-centered? So at this stage, and based on the number of procedural irregularities that occurred, again, all of which went against the plaintiff and adversely impacted him alone, and none of which adversely impacted the complainant, Jane Roe, there is a plausible inference that it was based on gender bias. And some of the other irregularities I'd like to point out occurred during the hearing and adjudication process. This included the removal of both parties from the hearing during the testimony of the witnesses. Like it's contrary to the regulations, but it was both parties. It was both genders. That's correct. It was contrary to the regulations, and both parties were removed from the hearing. However, the significant point is that the parties were not similarly situated, meaning the plaintiff, as the accused, was in a much different position and had much more to lose should he be found responsible, which he ultimately was, and sanctioned, which he ultimately was, with an expulsion. There is a reason that the Constitution provides for a right to confront witnesses to an accused. There is a well-accepted precedent and recognition that an accused is in a much different position, and his inability to hear the examination of the witnesses, all five of which were adverse to him and were identified by the complainant, Jane Roe, severely impacted him and led to a finding by the hearing panel that he was responsible. That sounds like an argument to me that the procedures that are applied or were applied are problematic in your client's view. But what evidence or what is there that would allow an inference that the application of the procedures is because of his gender? So the important point to keep in mind is that as this court discussed in Dover's Purdue University in 2019, the court has to look at the totality of the evidence. So even if we look at just this particular fact in isolation, if that's not sufficient on its own, it's really a matter of whether when all of the facts alleged are considered, is there a plausible inference of bias? And some other errors that occurred during the hearing, I think, further highlight the impact to the plaintiff, the male accused alone, including the fact that his advisor was continually prohibited from asking the complaining party any relevant questions. So critical, objectively relevant questions such as those that related to the alleged misconduct. He also was for him to see this case is factually similar to Purdue. There are some similarities. It's a different factual background. There's no set list of facts that have to be established to meet the plausibility thresholds for a title nine claim when faced with a motion to dismiss. But I think there were equally concerning errors that occurred here, particularly during the hearing process, some of which I just mentioned. In addition to the fact that the plaintiff's advisor was not able to question the complaining party general about anything she said in her opening statement, which presumed that what she was claiming had happened was was true. So when plaintiff's advisor attempted to ask questions to point out inconsistencies or things that she had said that made her account not credible that she had said during her initial opening remarks, he was prohibited from doing so. He also was prohibited from asking the quote unquote outcry witness about what the complaining party had told her. So there were just a number of errors that occurred during the hearing process, again, all of which went against the plaintiff only and which prevented his advisor from exploring the credibility in Jane Roe's account. The hearing panel also ultimately found that the plaintiff was responsible, as I mentioned, and expelled him. But what they failed to recognize was that it was undisputed that the plaintiff was incapacitated by the university's own definition, meaning he could not and was not capable of consenting to sexual activity. The hearing panel disregarded this entirely. There was no discussion about it. It wasn't even mentioned in the hearing panel's decision letter. So that's another indication of how the male accused was treated differently and again, plausibly suggest that gender bias was a potential motivating factor here. The investigator also conducted an investigation that was far from thorough, which further raises another procedural irregularity. And she failed to fairly summarize the relevant evidence, which is another violation of the 2020 Title nine regulations. And the way that she conducted her investigation was by conducting interviews with the parties. There was no follow up. There was no probing questions that were asked of the complaining party, Jane Roe. And ultimately, she produced a report that was about five or six pages and really lacked in any substance. The hearing panel further. I'm sorry, rather the one other point I wanted to raise and something else that was discussed in Dover's Purdue was the external pressure that was created on the university. So the 2011 Dear Colleague letter led to a sea change in how universities handled and responded to sexual assault complaints. And this the atmosphere that was created persists to this day. So whether there have been a rescission of the rules or they're currently undergoing proposed rulemaking changes, that atmosphere and the culture that that impacted campuses and the university's concern about being subjected to an investigation or having federal funds withdrawn. That continues. And that's, again, not something to be viewed in isolation, but rather viewed in a totality in light of all of the circumstances to determine if there is a plausible inference. Again, we're at the motion to dismiss stage, so not whether the plaintiff may ultimately prevail on a motion for summary judgment or at trial. But at this point, is there enough to plausibly suggest that there was a gender bias motivation enough to get him past the hurdle of the initial motion to dismiss and to be able to conduct discovery in this matter. And unless the court has further questions, I'd like to reserve some time for rebuttal. That's fine. Thank you. Smith. Please the court Jennifer Smith for Rosalynn Franklin University. So first I want to address this, this concept raised by counsel that there is different stakes for the parties and so procedural errors hit them differently. The stakes for the parties were access to education for both of them title nine says those who are subjected to sexual harassment must be that must be corrected and or, you know, address so that they continue to have access. So there's no difference in stakes. The stake was access to education for for there's a difference in consequences. What's that? There's a difference in consequences of a student who's accused of sexual assault or sexual harassment. Some other sex based offense that implicates title nine is subject to a whole array of discipline, including up to and including expulsion, which is what happened here. Complaining party is not a complaining party argument pertains to, but the stakes are just as severe a complaining party consequences. Okay. What are the consequences of this proceeding? The consequences of the response are severe. The consequences for the complainant are non existent. No, they're going there. They're seeing you're the person who sexually assaulted you in class and having a safe learning environment there. I'm talking about the proceeding itself. What are the consequences that flow from the proceeding there? There are. No, there's no downside consequence for the complaining party to falsify testimony. Right there. Yeah. Yeah. You complaining party can be subject to discipline for falsifying testimony that that is absolutely also violates rules, but they would be subject to their own disciplinary hearing. So, but the consequences for the parties in this proceeding are one sided only the respondent is subject to sanctions at the end of the process. Well, the parties in this proceeding are the university and the university has a interest a that's fundamental to education to providing a safe learning environment. So, in this case, but at the proceeding at the at the title nine proceeding, we disagree that the complainant did not have an interest in the outcome. I'm not talking about an interest in the outcome. And I don't think that's what your opponent's argument is. The argument is that is that the accused has has more to lose in this proceeding than the complainant does. That's just self evident. Right. I don't think it is, but I, but I've, I've said why. And so I'll move off that point. The so when we're looking at the title nine case, the question is gender discrimination, not a redo of and whether the university discriminated and that was evident in some of your questions. And so that, you know, it was brought up the to totality of the circumstances, does it suggest gender discrimination, there was no explicit, you know, statement in the complaint that that there was some reference to to gender, but the instead the allegation is the totality of unfairness alleged amounts to gender discrimination. First of all, the supposed many errors, even as alleged are not errors. So I want to first address the alleged public pressure on this case does this is different from other cases that have become before because of the timing. If we grant you that I'd like to move you to another alleged area. Yeah, and that's the, the jurisdiction off campus bar drinking off campus allegations of sexual assault, not a university based event. If the university does not have jurisdiction, what consequences would that have for this, this proceeding. So jurisdiction under title nine is different than jurisdiction to address the conduct. So that's where I'm confused by the argument because they're saying title nine does not apply does not give the requirement that the university address that kind of, but title nine doesn't prohibit the university from having its own policy or state of RFU identical to title nine. Well, what we know, because we're at the motion to dismiss stage is they had a policy that, according to as, as it's alleged addressed both title nine and equal access to education. So, it could be identical or it could not be, but there would be no harm title nine at this point at this after the 2020 regulations provides respondents those accused with more robust rights and process than is afforded in any other area of student misconduct. So, to give title nine rights to the plaintiff at the hearing stage would only give him more process more protection and wouldn't be a violate a procedural violation that showed gender discrimination. It would, it would be a pro respondent question is whether the university extended its jurisdiction to, to adjudicate this complainants complaint to an off campus event over which it did not have substantial control, which is the test under the regulations and under your policy. Right, your client's policy and, and the irregularity of that is what the plaintiff argues is suggestive of sex based violence, or I'm sorry sex based bias bias in this case, because they extended the, the hearing administrator extended the university's jurisdiction to an off campus occurrence that it doesn't have any jurisdiction over. It does have jurisdiction, you know, just because it has substantial base battle over an off campus. When a student claims another student sexually harass them and complains to the university about the impact that's having here. It was as pled the appeal that was considered in the appeal. The, the party appeal beyond the hearing, and the university looked at that issue and said, we did have jurisdiction over this, this conduct and we are right to discipline you for it. And again, whether or not that falls under title 9, or the, it's policy that's pled there's a policy that might have, you know, we don't have the full policy, but it, it, it, he had not, you know, the, the planes acknowledge a policy. It doesn't harm or show gender discrimination. Is it a breach of contract. No, it's not a breach of contract either because we have no allegation that that there was some contractual guarantee to not discriminate not disciplining someone who sexually harasses their, their fellow student and the policy, the policy only applies in title 9 only applies to occurrences over which the university at locations at which the university has exercised substantial control. And that is not equivalent to off campus substantial control can mean different things and in other cases have been found to be off campus conduct and here this university reviewed that issue and found it did have jurisdiction over this conduct. The complaint alleges that this was procedurally irregular, because of what the policy says, and what the title nine regulations say about the university's jurisdiction to adjudicate these complaints. So, is that not something we just accept as an allegation in the complaint, rather than try to resolve it at this stage, they don't allege that it's they it's conclusory to say it's irregular they don't allege other cases, other cases where there was a female respondent, and they did not pursue it because it was off campus there's other than their conclusory statement this is a regular, we have nothing on that point and it's self evident in the title nine regulations that say universities are not restricted from addressing things that are beyond the scope of of our regulations. So with that my time. My time is called. All right. Miss Davis, you had some time in rebuttal. Thank you. Council for the university claims that the alleged procedural errors were were not necessarily errors because, or at least that the complaint didn't allege that. And when saying that the procedural errors were irregular what we mean by that, and if the court has any questions on this I'm glad to clarify but we mean that it was not in line with either the title nine regulations and or the university's policy. So, the complaint in our briefing makes clear that there were, again, a number of procedural issues or errors. Again, all of which went against the plaintiff and none of which went against Jane Roe the complaining party. What if we had all of these irregularities as I argued, and the accuser, and the respondent are flipped. What about the maleness or the femaleness enter inserts the gender aspect. So I think one of the more significant points is the fact that the university found or failed to investigate or look into whatsoever, the fact that the plaintiff the male accused was incapable of consenting again this issue is undisputed, it was made known to the title nine director and the investigator early on in the process because it was included in Jane Roe's own statement in the investigation report and they failed to take any action, despite having actual knowledge of that. So I think if the roles were reversed. I think it would be clear that if the university had information that a female student was incapable of consenting by the university's own policies to the point that she had no recollection of a period of seven to eight hours that night as to what happened. I think there's a decent presumption that the university would take steps to address that so that in particular is, is one issue that I see as being particularly indicative of gender bias, and I see that my time is up. Thank you very much and again I would just respectfully request that the court reverse the district courts decision. Thank you. Thanks to both counsel the case is taken under advisement, and we'll move to our fifth case.